## PAYNE, director-general, *v.* WEST· POINT WHOLESALE GROCERY COMPANY *et al.*

The court did not err in refusing the injunction and other relief sought in this case.

No. 2122.  JANUARY 14, 1921.

Equitable petition. Before Judge Terrell. Troup superior court. June 8, 1920.

The defendants in error, twelve or more in number, filed suits in the city court of La Grange, Georgia, and in the justice's court of the 701st district G. M., of Troup County, Georgia, against W. D. Hines (since succeeded by John Martin Payne) as director-general of the Railroad Administration of the United States, operating the Atlanta and West Point Railroad and the Western Railway of Alabama. The subject-matter of these suits (fifty or more) was damages from freight shipments. The defendant filed demurrers and pleas in all or nearly all of these cases. On May 12, 1920, the defendant filed his equitable petition in the superior court, in which it was alleged in substance as follows:  About the 9th or 10th of December, 1918, while said two railroads were being operated as part of the system of railroads under the authority of the government, an unprecedented rise in the waters of the Chattahoochee River, upon which river is located the City of West Point, Georgia, overflowed said city and caused great loss and damage to the property therein. The City of West Point is one

terminus of each of said two railroads, and each has its depots and yards in said city. At the time when the waters of the river flooded the city and depots, tracks, and yards of the two railroads, a large mass of goods and merchandise was in the possession of the two railroads in the city, either as common carrier or as warehouseman, and much loss and damage resulted to the same by waters of the flood. The director-general of railroads, through his agents and employees in charge of these termini, was unable to protect the goods and merchandise from the loss and damage caused by the flood, and the loss was occasioned by the act of God, and under the law the government was not liable therefor. But a large number of the owners of such goods and merchandise have instituted a great number of suits in the city court of La Grange and the justice's court of the 701st district G. M., of Troup county, varying from a few dollars to several thousand dollars. The West Point Wholesale Grocery Company has instituted 18 cases, the West Point Investment Company 3 cases, Johnson & Company 3 cases, Jones-Knight Grocery Company 2 cases, O. L. Shellnut 2 cases, Batson-Cook Company 4 cases, and Eady Baker Grocery Company 2 cases; all of these cases in the city court. In the justice court the West Point Wholesale Grocery Company instituted 6 cases, Nichols-Jones Furniture Company 3 cases, O. L. Shellnut 1 case, and Batson-Cook Company 1 case. All the cases brought by the West Point Wholesale Grocery Company could have been incorporated into one suit; and the same is true as to the suits of the West Point Investment Company, Johnson & Company, Jones-Knight Grocery Company, O. L. Shellnut, Batson-Cook Company, and Eady Baker Grocery Company. Goldstein Brothers, E. H. Woodham, Farmers' Product Company, and Charles Kurtz instituted one suit each. The defense to each and all of these suits is the same, to wit, exemption from liability because the loss and damage claimed were occasioned by the act of God; and substantially the same evidence would be used to establish the said defense in each of the cases. The evidence for plaintiff in each case to establish a prima facie case would be practically the same. The trial of any of said cases would involve a great mass of evidence, would consume days, and would incur a very great expense to secure the attendance of a large number of witnesses, many of whom are employees of the railroads, the services of whom are needed in the

operation of the railroads. The sums in a large number of the cases are so small that the expense necessary to try them would exceed the amount claimed. The purpose was to force the government to pay the claims rather than assume the expense of a defense. The petitioner prays that the parties plaintiff in each of said suits be enjoined from prosecuting their several actions at law, and that they be made parties to this petition and be required to file in this cause their several claims for destruction or damage to their property; and, when the answers setting up the claims of the various parties have been filed, that the court appoint an auditor and refer the case to him to investigate and report to the court his findings on all questions which may be made by the pleadings.

The defendants denied that all of the parties had a common right, insisted that the issues in all of the cases were not the same, and denied any purpose or intention by the bringing of the various suits to harass petitioner, etc. Upon the hearing the court refused to grant an interlocutory injunction, and the petitioner excepted.

*Brewster, Howell & Heyman,* for plaintiff.

*E. T. Moon* and *B. J. Mayer,* for defendants.

BECK, P. J. (After stating the foregoing facts). It is insisted that under the provisions of our statutes relating to certain branches of equitable jurisdiction the petitioner is entitled to the injunctive relief sought, and counsel quote the following provisions of law: Civil Code, § 5469, declaring: " Equity will entertain a bill of peace . . To avoid a multiplicity of suits, by establishing a right, in favor of or against several persons, which is likely to be the subject of legal controversy, or in other similar cases." And Civil Code, § 5419 : " Where there is one common right to be established by or against several, and one is asserting the right against many, or many against one, equity will determine the whole matter in one action." Further, so much of section 5493, in regard to restraining trespasses, which declares that the avoidance of circuity and multiplicity of actions is among the grounds authorizing a court of equity to interfere to restrain trespasses. Also that part of section 4586, relating to accounts, and giving equity jurisdiction " where a multiplicity of suits would render a trial difficult, expensive, and unsatisfactory at law."

Notwithstanding the broad language used in certain of our decisions and in the decisions of other courts, applying the principles

relating to equity jurisdiction, embodied in the code sections from which we have quoted, we are. of the opinion that the court below properly refused to grant the injunction sought. The fact that the defense set up by the plaintiff in this case to the various suits at law was involved in all of the cases would not alone have authorized the court to grant the injunction. In some of the suits which were brought for the recovery of damages the liability of the railroad companies might be that of warehouseman, or it might be that of common carrier of freight; in which cases a different rule of diligence would obtain and be applicable. Moreover, the various parties to this action not only have no community of interest in the subject-matter of the suit, but they have not a common right. Counsel for the plaintiff relies very largely upon the decision in the case of *Smith* v. *Dobbins,* 87 *Ga.* 303 (13 S. E. 496). In that case it was said: "The doctrine is well established that equity will interfere to restrain the bringing of a multiplicity of suits when the rights of all concerned may be adjudicated without prejudice to any in a single proceeding; and there is no reason in principle why this rule should not be applied to cases already brought and pending by consolidating them into a single case. In 1 High on Injunctions, § 12, we find the following: 'Where there is one common right in controversy which is to be established by or against several persons, one person asserting the right against many, or many against one, equity may interfere, and, instead of permitting the parties to be harassed by a multiplicity of suits, determine the whole matter in one action.' See also 2 High on Injunctions, § 1406; Story on Eq. Pl. § 286; and Wait on Fraud. Con. §§ 151, 152, and cases there cited. The doctrine is fully discussed in 1 Pomeroy's Eq. Jur. §§ 255 et seq. In § 269 is the following: 'Under the greatest diversity of circumstances, and the greatest variety of claims arising from unauthorized public acts, private tortious acts, invasion of property rights, violation of contract obligations, and notwithstanding the positive denials by some American courts, the weight of authority is simply overwhelming that the jurisdiction may and should be exercised either on behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against such a numerous body, although there is no 'common title,' nor 'community of right,' or of 'interest in the subject-matter,' among these individuals, but where there is and be-

4

cause there is merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body." While some of the language of the quotation from Pomeroy's Eq. Jur. may sustain counsel for the plaintiff in the position taken, we do not think that it should be given unqualified acceptance in its entirety. In a later edition the author has modified the language employed in the extract quoted in the case of *Smith* v. *Dobbins,* supra. It can not be maintained now that the overwhelming weight of authority in the United States sustains to its full extent the rule originally laid down by the writer referred to. See Southern Steel Co. *v.* Hopkins, 157 Ala 175 (47 So. 274, 20 L. R. A. (N. S.) 848, 131 Am. St. R. 20, 16 Ann. Cas. 690) ; Id., 174 Ala. 465 (57 So. 11, 40 L. R. A. (N. S.) 464, Ann. Cas. 1914B, 692) ; Vandalia Coal Co. *v.* Lawson, 43 Ind. App. 226 (87 N. E. 47) ; Ducktown Co. *v.* Fain, 109 Tenn. 56 (70 S. W. 813) ; Scottish Union Ins. Co. *v.* Mohlman Co., 73 Fed. 66; Lehigh Valley R. Co. *v.* McFarland, 31 N. J. Eq. 730; notes to Roanoke Guano Co. *v.* Saunders, 35 L. R. A. (N. S.) 491; Mechanic Ins. Co. *v.* Hoover, 32 L. R. A. (N. S.) 941; Dixie Fire Ins. Co. *v.* American Confectionery Co., 34 L. R. A. (N. S.) 897; Davis *v.* Forrestal, L. R. A. 1915F, 1012. It is unnecessary to repeat here by way of paraphrase or quotation the reasoning in the cases here cited. Those interested in making more thorough examination of the question can readily turn to the cases referred to and to the cases cited there or in the notes to such of the cases as appear in the volumes of L. R. A. Let us revert to the *Dobbins* case and briefly review the essential issue in that case in reference to which that division of the opinion was written which contains the quotation from Pomeroy's Eq. Jur. The essential facts, the issue made, and principle applied is thus stated by Justice Lumpkin, who delivered the opinion of the court: " In reply to the suggestion that the plaintiff in the present case should not be allowed to consolidate all these claim cases into one, because he himself was responsible for their existence, he having filed his claim to the property in every instance where a levy thereon was made, which he was not absolutely compelled to do, it may be said that in filing such claims he only availed himself of one of the methods which the law gave him for the protection of his alleged rights. The fact

that he resorted to a statutory remedy in each case should not, we think, deprive him of the more valuable remedy in equity of having all this litigation terminated by a single verdict and judgment, the more especially as so doing could in no way injure any of the parties. Whether or not the agreement between him and Wofford constituted such a fraud upon Wofford's creditors as would invalidate Dobbins' title to the land, was a question involved in all the claim cases, and was a vital one in each. Upon its determination depended, in every one of these cases, the subjection or non-subjection of the property; and we are unable to perceive why, in justice and upon principle, this question should not be determined once for all, and thus finally settle in one judgment, without having numerous, tedious, and expensive trials, the rights of all these parties." Thus we see that the vital question in each of the cases was whether an agreement between the claimant and a named person constituted such a fraud upon one of the parties to the agreement as would invalidate the claimant's title to land; and upon the determination of this question " depended, in every one of these cases, the subjection or non-subjection of the property." Other cases decided by this court are distinguishable on their facts or the controlling issues.

It is provided in our statute relating to the matter of consolidation of suits, that where there is one common right to be established by or against several, and one is asserting the right against many, or many against one, equity will determine the whole matter in one action. Civil Code, § 5419. In the case of *George W. Muller Bank Fixture Co.* v. *Southern Seating &c. Co.,* 147 *Ga.* 106 (92 S. E. 884), it was said: " A suit in equity, based on separate and distinct claims against different persons, where there is no common right to be established, will be dismissed on demurrer on the ground of multifariousness." And in the opinion in that case it was said: " As this was an effort to join in one action separate and distinct claims against different parties, where there was no common right to be established, the petition was subject to demurrer upon the ground that it was multifarious." In another case it was said: " It is error to consolidate two or more cases which are not between the same parties and which do not involve the same pleas upon which the same judgment may be rendered." *City of Dalton* v. *Elk Cotton Mills,* 146 *Ga.* 89 (90 S. E. 718). See also *White* v. *Electric Co.,*

128 *Ga.* 539 (58 S. E. 33). While in all the cases sought to be consolidated it is pleaded by the defendant that the damage claimed was the result of an act of God, nevertheless that principle involves, to a certain extent, the question of negligence. The Civil Code, § 2712, after defining who is a common carrier, provides: " In cases of loss the presumption of law is against him, and no excuse avails him unless it was occasioned by the act of God or the public enemies of the State." And section 2713 provides: " In order for a carrier or other bailee to avail himself of the act of God, or exception under the contract as an excuse, he must establish not only that the act of God or excepted fact ultimately occasioned the loss, but that his own negligence did not contribute thereto." In the case of *Charleston &c. Ry. Co.* v. *Nixon Grocery Co.,* 142 *Ga.* 343 (82 S. E. 893), it was held: " In an action brought against a common carrier, to recover the value of goods delivered to it for transportation to certain consignees, where the sole defense was that the goods were not delivered because they were destroyed by act of God (an unprecedented flood of water in the Savannah river which inundated and destroyed the goods), the burden was on the carrier to establish not only that the act of God occasioned ultimately the loss, but that the negligence of the carrier did not contribute to it." And the question of negligence which may arise in these cases under the pleadings is one peculiarly for determination by a jury, and as to which the parties have the right to a jury trial,— a right that might not be as complete under proceedings before an auditor appointed in equitable proceedings as it would be should the cases proceed to trial in the courts of law where they have been instituted. The court does not mean, by anything here said, to hold that certain of the cases pending in the city court and in the justice's court, where the parties are the same and the issues are the same, may not be consolidated upon proper motion or petition, where such consolidation would not oust the court of jurisdiction.

Considering the character of the cases brought and the pleas actually filed, and appropriate defenses which could properly be made the subject of amendments, the court below properly refused the injunctive and other relief sought by the petition.

*Judgment affirmed. All the Justices concur.*